UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-21518-CIV-JORDAN/MCALILEY

CANON LATIN AMERICA, INC.,
a Florida corporation,

       Plaintiff,

v.

LANTECH (C.R.) S.A., a Costa Rica
company, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION ON MOTIONS FOR
## SUMMARY JUDGMENT AND ORDER ON RELATED MOTIONS

Pending before the Court are Plaintiff's Motion for Partial Summary Judgment as to

Liability on Counts I and III of the Third Amended Complaint [DE 362], Defendant

Lantech's Motion for Summary Judgment [DE 357], Defendant Manuel Jimenez' Motion for

Summary Judgment [DE 360], Defendant Robert C. van der Putten Reyes' Motion for

Summary Judgment [DE 361], and Defendants, Documentos y Digitales, S.A., Easton

Commerce, S.A., and Documentos y Digitales Difoto, S.A.'s Motion for Summary Judgment.

[DE 358].[1]  Also before the Court are Plaintiff's motions to conduct further discovery

---

[1] There is a fourth Difoto Defendant, identified by Plaintiff as Distribuidora Fotografica,
S.A. a/k/a Grupo Difoto, S.A. [*See Third Amended Complaint*, DE 153-1]. Grupo Difoto contends
that it is not the same entity as Distribuidora Fotografica and that it has not been served in this
action. [DE 212]. Consistent with this position, Grupo Difoto has not moved for summary
judgment. Canonlat, in turn, has not moved for summary judgment against Grupo Difoto. [DE 362,
p. 9].

pursuant to Federal Rule of Civil Procedure 56(f)[2] [DE 404; 406], and requests for oral

argument by Plaintiff and the Difoto Defendants. [DE 409; 414]. The Honorable Adalberto

Jordan referred these motions to me.

For the reasons set forth below, I recommend that the Court deny Plaintiff's motion

for partial summary judgment and grant Defendants' motions for summary judgment.

By Order, I deny the motions to conduct further discovery and the requests for oral

argument.

I.    **Background**[3]

This action arises from a long-running dispute between Plaintiff, Canon Latin

America, Inc. (Canonlat) and its former distributor in Costa Rica, Defendant Lantech, S.A.

In the summer of 2004, Lantech owed Canonlat approximately $250,000.00 under their

distribution agreement. [DE 362, ¶ 6]. Around that time, Canonlat announced that it was

entering into an agreement with a second distributor in Costa Rica. [DE 362, ¶ 7]. Lantech

thereafter entered into negotiations with one or more of the Difoto Defendants for the sale

of its assets and liabilities. [DE 362, ¶¶ 10-11]. As part of these negotiations, Defendant

Jimenez, who was the President and Chairman of Lantech's Board of Directors, met with a

---

[2] Under the amendments to the Federal Rules of Civil Procedure effective December 1, 2010, this section was redesignated 56(d). The motions were filed before the amendment and use the old designation, which I continue to use here in reference to that section of the Rule. Otherwise, all references to the Rules are to the current version.

[3] The factual and procedural history of this action is lengthy and complicated. I set forth here sufficient undisputed facts to give a general overview, and later include additional facts as needed for consideration of particular motions.

representative of Defendant Grupo Difoto, a Panamanian holding company; these meetings led to the shareholders of Lantech entering into a Memorandum of Understanding with Grupo Difoto for its anticipated purchase of selected assets and liabilities of Lantech. [DE 362, ¶ 5; DE 363-9, pp. 2-3]. On November 11, 2004, Lantech brought suit against Canonlat in Costa Rica pursuant to Costa Rica Law 6209, claiming Canonlat wrongfully terminated Lantech's alleged exclusive distributorship. [DE 356, ¶ 10]. Defendant Robert C. van der Putten Reyes, an attorney, filed that lawsuit on behalf of Lantech. [DE 356, p. 2, ¶ 5; p. 4, ¶¶ 1-3]. Lantech, through van der Putten, brought a similar suit against another of its suppliers, Sun Microsystems. [DE 354-1, p. 8].[4]

On December 7, 2004, Lantech and Easton Commerce, one of the Difoto Defendants, a special purpose entity created for the purpose of conducting the transaction with Lantech, entered into a Purchase and Sale Agreement. [DE 364-2, pp. 1, 6-7]. That Agreement provides that Easton would purchase from Lantech certain enumerated assets and liabilities [DE 399, pp. 17-18]. The Agreement excludes from the sale Lantech's debt to Canonlat [DE 364-2, p. 2], and "litigation, arbitration, criminal, civil, administrative, labor proceedings, or of any other nature, or any investigation by an authority that is pending and in process on even date. . . ." [DE 364-2, p. 12]. Pursuant to Costa Rica law, Lantech published notice of the sale in the newspaper. [DE 356, ¶ 21, 22].

On February 1, 2005, Canonlat brought an action in federal court in Miami against

---

[4] Citations to depositions, such as this one, are to the page number of the docketed entry, not the page of the deposition itself.

Lantech, seeking to enjoin the Costa Rica action and to collect on its unpaid invoices in the amount of $247,653.20. [DE 362, ¶¶ 31-2].[5] While the district court initially entered summary judgment in favor of Canonlat on the injunction action, the Eleventh Circuit Court of Appeals vacated the injunction and dismissed Canonlat's claims for injunctive and declaratory relief. Canonlat and Lantech did, however, enter into a consent judgment in favor of Canonlat for the amount of unpaid invoices. *Canon Latin America, Inc. v. Lantech (CR), S.A.*, 508 F.3d 597, 599, 602 (11th Cir. 2007).

Canonlat filed its original complaint in this action on May 27, 2008, bringing claims for breach of contract (Count I), fraudulent transfer (Count II) and civil conspiracy (Count II), against Lantech, Jimenez and van der Putten. [DE 1]. A year later, on May 8, 2009, Canonlat filed a Corrected Second Amended Complaint adding Grupo Difoto S.A., f/k/a Distribuidora Fotografica, S.A., and Documentos y Digitales Difoto, S.A. as defendants. In that Complaint, Canonlat asserted claims for fraudulent transfer against Lantech and the two Difoto Defendants (Count I), civil conspiracy against Jimenez, van der Putten and the Difoto Defendants (Count II) and piercing the corporate veil against Jimenez (Count III). [DE 128]. On January 11, 2010, Canonlat filed a Third Amended Complaint that added two new Difoto Defendants: Easton Commerce, S.A. and Documentos y Digitales, S.A., and corrected the name of Distribuidora Fotografica, S.A. a/k/a Grupo Difoto S.A., (which had been inverted

---

[5] This lawsuit is referred to as *Cannon I* in this action.

4

in the earlier Complaint) [DE 153-1].[6]

## II.    Analysis

A party seeking summary judgment must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Maniccia v. Brown*, 171 F.3d 1364, 1367 (11th Cir.1999).   The movant bears the initial responsibility of informing the Court of the basis for its motion and of identifying those materials which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In response to a properly supported motion for summary judgment, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but must either set forth specific facts which show a genuine issue for trial or show that the materials cited do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1).   If the non-moving party fails to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then the Court must enter summary judgment for the moving party. *Celotex Corp.*, 477 U.S. at 323.   The Court, however, must view the evidence and factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Maniccia*, 171 F.3d at 1367.

"By its very terms, this standard provides that the mere existence of *some* alleged

---

[6] Plaintiff actually filed the Third Amended Complaint on January 8, 2010, along with an unopposed motion for leave to file that Complaint. [DE 153]. On January 11, 2010, Judge Jordan entered an Order granting that motion, directing that the Third Amended Complaint be deemed filed as of the date of that Order. [DE 154].

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis added); Fed. R. Civ. P. 56(c)(1)(B). A material fact is one which "might affect the outcome of the suit under the governing law. . . ." *Id.* at 248. Therefore, the appropriate inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

## A.    Canonlat's Motions to Conduct Further Discovery Pursuant to Rule 56(f)

Although Canonlat believes there was sufficient discovery for purposes of the summary judgment motions it has filed, it complains that it has not had an adequate opportunity to conduct the discovery it needs to defend against Defendants' motions. Canonlat thus asks the Court, pursuant to Rule 56(f) to delay ruling on Defendants' motions for summary judgment until it takes additional discovery. [DE 404; 406].[7] A party seeking to invoke Rule 56(f) to delay resolution of a motion for summary judgment must "show by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition. . . ." Fed. R. Civ. P. 56(f). The Eleventh Circuit has explained that:

> because the burden on a party resisting summary judgment is not a heavy one, one must conclusively justify his entitlement to the shelter of rule 56(f) by presenting specific facts explaining the inability to make a substantive response as required by rule 56(e) and by specifically demonstrating how

---

[7] The Rule 56(f) motions were included in Canonlat's memorandum in response to Defendants' summary judgment motions [DE 400, p. 23-4; 401, pp. 28-30], and the Clerk's office assigned the motions separate docket numbers.

postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.

*Wingster v. Head*, 318 Fed.Appx. 809, 813 (11th Cir. 2009).

Canonlat argues that it is entitled to relief under Rule 56(f) because Defendants have delayed both its deposition and document discovery efforts. Its description of these alleged delays is mostly limited to discovery disputes in the few months before Canonlat filed its response to the Defendants' summary judgment motions. [DE 400, pp. 23-4; 401, pp. 29-30]. While it complains broadly that Defendants have dragged their feet in discovery, Canonlat identifies only two specific areas of inquiry it claims are necessary to rebut Defendants' summary judgment motions: (1) it wants to depose Jimenez again because after his last deposition Jimenez filed an affidavit in which he changed his deposition testimony that he personally guaranteed Lantech's loan from Banco Cuscatlan [DE 400, p. 24] and, (2) it wants to depose Difoto Defendant corporate representatives "with respect to, among other things, the actual dates that Lantech's assets were transferred" for the purpose of challenging Difoto's statute of limitations argument. [DE 401-6, p. 2].

As for Jimenez's late-filed affidavit, the Court does not rely upon it in resolving these motions. Thus, that does not justify an extension of discovery. Moreover, Canonlat has not otherwise demonstrated how more discovery will enable it to rebut the Defendants' showing of the absence of a genuine issue of material fact. *Wingster*, 318 Fed. Appx. at 813.

The parties have had a broad and fair opportunity to engage in discovery. This action has been pending since early 2008, and Canonlat has been in litigation with Lantech since

2005. The first Difoto Defendants were joined in mid-2009 and Canonlat became aware of the Difoto Defendants' relationship with Lantech, at the very latest, by early 2007. Over the course of *Canon I* and this action, Canonlat has deposed Jimenez three times, and has also deposed van der Putten and a representative of the Difoto Defendants. While Canonlat complains that it only addressed jurisdictional issues at these depositions, the Court has reviewed all the transcripts provided by the parties in connection with the summary judgment motions and it is clear that at these depositions Canonlat engaged in significant discovery regarding the merits.

In addition, Canonlat has served numerous sets of substantive written discovery on Lantech, Jimenez, van der Putten, and the Difoto Defendants in this action, as well as on Lantech in *Canon I*. Canonlat has been aware since at least January 2007 that Lantech had given all its documents to the Difoto Defendants, but gives no explanation for its failure to seek those documents in discovery, by letters rogatory or otherwise, before the summer of 2010. The Court has already extended the discovery deadline in this action, [DE 190], and Canonlat has had two years to engage in discovery regarding the details of the transaction between Lantech and Difoto. On this record, Canonlat has failed to "conclusively justify" its entitlement to the shelter of rule 56(f), *Wingster, Id.*, and its motions are therefore denied.

**B.    Choice of law**

Defendants move for summary judgment on the ground that, under a Florida choice of law analysis, Costa Rica law applies to Canonlat's claims. Defendants simply argue that

8

because Canonlat brought its claims solely under inapplicable Florida law, Defendants are therefore entitled to summary judgment on all counts as a matter of law. [DE 358, pp. 3-7; 357, pp. 10-12; 360, pp. 9-10; 361, pp. 12-13]. There are a number of flaws in this argument.

By way of background, a federal court sitting in diversity must apply the choice of law rules of the forum state. *Nelson v. Freightliner, LLC*, 154 Fed. Appx. 98, 102 (11th Cir. 2005). In tort cases such as this one, Florida courts apply the significant relationship test set forth in Restatement (Second) of Conflict of Laws. *Id.* Section 145(1) of the Restatement provides that: "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement (Second) of Conflict of Law § 145(1). Section 145(2) lists four contacts "to be taken into account in applying the principles of § 6 to determine the law applicable. . . ." *Id.* at § 145(2)

The first problem with the Defendants' argument is the way in which they present their analysis under the Restatement: they mechanically tally up the four contacts listed in section 145(2) of the Restatement,[8] without even acknowledging the analysis required by section 6, and then conclude that Costa Rica is the forum with the most significant relationship to this action and, thus, Costa Rica law should apply. [DE 358, pp. 4-7; 357, pp.

---

[8] Those four contacts are: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties, is centered. Restatement (Second) of Conflict of Laws § 145(2).

10-12; 360, pp. 9-10; 361, pp. 12-13]. The Eleventh Circuit expressly rejected this approach:

> To determine which state has the most significant relationship we cannot simply add up the factors delineated in section 145(2) and then apply the law of the sovereign with the greatest numerical total . . . . Rather, we must, as mandated by section 145(1), turn to the factors delineated in section 6 to determine which sovereign has the most significant contacts.

*Nelson*, 154 Fed.Appx. at 104 (quotation marks and citations omitted). The factors set forth in section 6 are:

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

*Id.* at 103 (quoting Restatement (Second) of Conflict of Law, § 6). The Court must compare the four contacts delineated in § 145(2) in light of the factors listed in section 6, for the purpose of determining which forum - Costa Rica or Florida - has the most significant contacts; it is the law of that forum that should then be applied to the parties' dispute.

Defendants, however, have provided the Court with scant evidence of Costa Rica law. They would have this Court simply take it on faith that a full choice of law analysis would lead to the conclusion that the Court must apply Costa Rica law. In their reply, the Difoto

10

Defendants briefly allude to the affidavit of Javier Leon Longhi [DE 222], filed by them in support of their motion to dismiss for *forum non conveniens*, which describes in the most general terms the avenues of legal redress possibly available to Canonlat in Costa Rica, many of which fall under its criminal code. [DE 441, p. 11]  That affidavit, however, does not compare what Defendants claim is the governing Costa Rica law, with the Florida law under which Canonlat has brought this lawsuit, to allow the Court to consider all the factors listed in section 6 of the Restatement.

"Where either no information, or else insufficient information, has been obtained about the foreign law, the forum will usually decide the case in accordance with its own local law." *Cavic v. Grand Bahama Dev. Co., Ltd.*, 701 F.2d 879, 882 (11th Cir. 1983) (quoting Restatement (Second) of Conflicts § 136, comment h).  Here, Defendants have failed to provide the Court with sufficient information regarding the law of Costa Rica that would allow the Court to undertake a reasoned analysis of the choice of law factors set forth in section 6 of the Restatement (Second) of Conflicts; Defendants have therefore failed to persuade the Court that only Costa Rica law applies to Canonlat's claims.  Accordingly, I recommend that this argument for entry of summary judgment in favor of all Defendants be denied.

### C.     The Lantech Defendants' Motions for Summary Judgment are not Moot

Canonlat asserts that the motions for summary judgment by the Lantech Defendants must be denied as moot because the Court struck these Defendants' affirmative defenses.

11

Because, Canonlat argues, the Lantech Defendants' motions for summary judgment "rely entirely on their stricken affirmative defenses," [DE 400, pp. 10], the Lantech Defendants cannot properly present any evidence to support their arguments, and the motions must be denied. Canonlat is incorrect.

As a threshold matter, not all of the Lantech Defendants' arguments for summary judgment rely on an affirmative defense. [*See e.g*, DE 357, pp. 6-10; DE 360, pp. 4-9, 11-15; 361, pp. 6-10]. More fundamentally, the Court granted the Lantech Defendants leave to amend their affirmative defenses; it so happens that the deadline for their doing so was after the deadline for filing summary judgment motions. [DE 378]. The Lantech Defendants did file amended answers and affirmative defenses [DE 392, 393, 394]; the fact that they did this (with court permission) after they moved for summary judgment, is unimportant. Canonlat makes this argument relying on cases where a party's affirmative defenses were stricken with prejudice, which is not what happened here.

### D.    Canonlat's Fraudulent Transfer Claim Against Lantech is Barred by the Contractual Limitations Clause

Lantech moves for summary judgment on Count I, fraudulent transfer, on the ground that Canonlat's claim is time barred by the limitations clause in the contract between Lantech and Canonlat. [DE 357, pp. 4-5].[9] The parties, in their Distribution Agreement, agreed to the following one-year limitations period:

---

[9] Lantech asserted this affirmative defense in its amended answer. [DE 392, ¶ 57].

> ANY SUIT BETWEEN THE PARTIES, OTHER THAN FOR PAYMENT
> OF THE PURCHASE PRICE OF THE PRODUCTS OR FOR
> INDEMNIFICATION . . . SHALL BE COMMENCED, IF AT ALL, WITHIN
> ONE (1) YEAR OF THE DATE THAT CAUSE OF ACTION ACCRUES.

[DE 356-1, ¶ 19] (emphasis in original). Lantech invokes that agreement to argue that Canonlat's claim against it for fraudulent transfer is barred, because it was filed outside the one-year period.

The first question this argument presents, is whether the limitations period in the parties' contract governs Canonlat's fraudulent transfer claim - which is not a contract claim. The limitations provision here applies to "any suit between the parties" and the Eleventh Circuit interpreted the scope of a very similar provision, concluding that it applied to all claims between the parties to the contract, not just contract claims. *Maxcess, Inc. v. Lucent Tech., Inc.*, 433 F.3d 1337, 1342 (11th Cir. 2005) (contract established limitations period for "any action or proceeding" between the parties to the contract). Notably, the Court had to interpret that contract under New York law, and it applied the principal, followed by New York courts, that "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." 433 F.3d at 1342, citing *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562 (2002). The Court found that the plain meaning of the contract "clearly covers 'any action or proceeding,' and is not limited to contractual or tort claims. Consequently, we conclude that the shortened limitations period covers both claims arising in contract law and in tort law." *Id.*

This Court, sitting in diversity, must apply the law of Florida when interpreting the

13

Distribution Agreement. *Admiral Ins. Co. v. Feit Management Co.*, 321 F.3d 1326, 1328 (11th Cir. 2003) (federal court sitting in diversity applies the substantive law of the forum state unless federal constitutional or statutory law compels otherwise). Not surprisingly, Florida courts apply the same principal of contract interpretation, as that relied upon by New York courts. *See e.g.,Orlando v. MSD-Mattie, L.L.C.*, 895 So.2d 1127, 1129 (Fla. 5th DCA 2005) (applying "the fundamental legal precept that . . . [a] contract, when unambiguous, is to be construed in accordance with its plain meaning."). The analysis of the limitations language in the Distribution Agreement, leads to the same conclusion as that reached by the Eleventh Circuit in *Maxcess*: the broad and unambiguous language encompasses all claims between the parties, to include Canonlat's claim against Lantech for fraudulent transfer.

The next question that must be answered is whether Canonlat's claim, first filed on May 27, 2008 [DE 1], was filed outside the one year limitation period; and it undisputably was. Lantech identifies four possible dates when Canonlat's cause of action could have accrued, the latest of which, March 5, 2007, still places Canonlat's fraudulent transfer claim beyond the one-year period. Canonlat does not dispute Lantech's conclusion, the result of which, Lantech argues, is that Canonlat's fraudulent transfer claim is barred and the Court should enter summary judgment in its favor as a matter of law, on Count I. [DE 357, p. 5].

The Court, however, must address one last argument, that Canonlat raises: that Florida Statute section 95.03 voids the enforcement of this provision of the parties' contract. That statute provides:

14

> Any provision in a contract fixing the period of time within which *an action arising out of the contract* may be begun at a time less than that provided by the applicable statute of limitations is void.

Fla. Stat. § 95.03 (emphasis added). This statute is relevant here, because Florida law provides a four-year statute of limitations for Canonlat's fraudulent transfer claim - a longer period than that provided in the parties' agreement. Fla. Stat. § 726.110. And, Lantech does not suggest that Canonlat's claim would not be timely filed under this limitations period. Thus, Canonlat is correct that if Florida statute section 95.03 applies here, the limitations period in the Distribution Agreement is void.

The Florida statute, however, by its terms, voids only those contracts that set a limitations period for "an action arising out of the contract." The final question thus becomes whether Canonlat's claim for fraudulent transfer is one "arising out of the contract," such that the one-year limitations period is void. Neither party has cited for the Court any decision that interprets the phrase "an action arising out of the contract" found in section 95.03, and in its own search, this Court has found no reported decision that addresses this question.

Faced with unambiguous statutory language, this Court must, of course, enforce that language. *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So.2d 452, 454 (Fla. 1992) ("[i]t is a fundamental principle of statutory construction that where the language of a statute is plain and unambiguous there is no occasion for judicial interpretation"). Here, the phrase "an action arising under the contract" does not suggest any ambiguity. Rather, it plainly references a claim brought by a party to the contract to enforce the terms of that

15

contract. A complaint, that one party to a contract, fradulently transferred its assets with the "intent to hinder, delay or defraud" the other party to the contract [DE 158-1, p. 11, ¶ 42; *Third Amended Complaint, Count I*], does not arise under the contract, but rather arises independently of it.

This interpretation is supported by a Florida Supreme Court decision, identified by the Court, that interprets nearly identical language albeit in different circumstances, that lends persuasive authority here. In that case, *Seifert v. U.S. Home Corp.* 750 So.2d 633 (Fla. 1999), the Florida Court had to decide whether the tort action before it was governed by an arbitration clause in parties' contract, which required arbitration of "any controversy or claim arising under or related to this Agreement." *Id.* at 635. The Court applied a rule of construction that required it to determine the intent of the parties, *id.* at 636, and on the facts there explored whether there was a nexus between the wrongful death action before it, and the parties' contract for the sale and purchase of a home. *Id.* at 638. The Court also noted that it was guided by the general policy favoring arbitration. *Id.* at 638. These latter two aspects of the *Seifert* case, of course, do not apply here. The following, however, is useful: after surveying decisions within Florida, as well as other jurisdictions, expressing different views on the subject, *id.* at 636-640, the Supreme Court announced that it agreed with the following "framework for analysis":

> If the contract places the parties in a unique relationship that creates new duties not otherwise imposed by law, then a dispute regarding a breach of a contractually-imposed duty is one that arises from the contract. . . . If, on the other hand, the duty alleged to be breached is one imposed by law in

16

recognition of public policy and is generally owed to others besides the
contracting parties, then a dispute regarding such a breach is not one arising
from the contract, but sounds in tort.

*Id*. at 640 (internal citation omitted) (quoting *Dusold v. Porta-John Corp.*, 807 P.2d 526, 531

(Ct.App. 1990).

Applying that same "framework for analysis" here, we see clearly that Canonlat, in

Count I of its Complaint, is suing to enforce Florida public policy - codified in Florida

Statute section 726.105 - that prohibits fraudulent transfers. The Complaint is clear that the

actionable conduct is Lantech's sale of its assets, in December 2004, to Easton. Lantech's

duty to not engage in fraudulent transfers is one it owes, regardless of the obligations it

assumed in the Distribution Agreement. In fact Canonlat, in this action, brings no claim

against any Defendant to enforce any provision of that Agreement.[10]

On this reasoning, I conclude that Canonlat's fraudulent transfer claim is not one

"arising out of the contract" between the parties, and thus section 95.03 does not void the one

year limitation period in that contract as it applies to the claim here. Because Canonlat's

claim against Lantech for fraudulent transfer falls outside the contractual limitations clause,

the claim is barred as untimely and I therefore recommend entry of summary judgment in

---

[10] Notably, Canonlat brought a breach of contract claim, to enforce Lantech's payment
obligations under the Distribution Agreement, in *Canon I*, and the parties entered into a consent
judgment on that claim. 508 F.3d at 600 n. 4. No contract claim is asserted in this second round of
litigation.

17

favor of Lantech on Count I.[11]

### E.    Van der Putten's Motion for Summary Judgment on Count II

In Count II, Canonlat accuses Jimenez, van der Putten and Difoto of having engaged in a civil conspiracy to defraud Canonlat by transferring the assets of Lantech to Difoto. [DE 153-1, p. 12, ¶ 47]. Defendant van der Putten moves for summary judgment on Count II on the ground that the undisputed facts establish he had no involvement in the sale of Lantech's assets and liabilities to Easton Commerce, and thus, the claim for civil conspiracy fails as a matter of law. [DE 361, pp. 6-10].[12]

To defeat van der Putten's summary judgment motion, Canonlat must present evidence that creates, at minimum, a material issue of fact regarding the following: (a) that there was an agreement between van der Putten and Jimenez and/or the Difoto Defendants; (2) to defraud Canonlat; (3) an overt act was done in pursuance of the conspiracy; and (4) Canonlat was damaged as a result of the acts done under the conspiracy. *Lipsig v. Ramlawi*,

---

[11] Lantech also moves for summary judgment on the merits of Count I and Canonlat moves for summary judgment against Lantech on this Count. [DE 357, pp. 6-10; 362, pp. 20-29]. Because I find that the contractual limitations provision resolves the summary judgment motions on Count I, I do not address the parties' cross motions for summary judgment on Count I on the substantive issue of whether the undisputed evidence supports the claim for fraudulent transfer against Lantech.

[12] Van der Putten also argues that the intracorporate conspiracy doctrine bars the claim against him. [*Id.* at pp. 10-12]. Specifically, van der Putten asserts that, as an alleged agent of Lantech, he could only have conspired with Lantech if he had a personal stake in the transaction between Lantech and Easton. [DE 361, p. 10]. This argument appears to be inapplicable, as Canonlat does not allege the van der Putten conspired with Lantech, but rather with Jimenez and Difoto. [DE 153-1, ¶ 47].

760 So.2d 170, 180 (Fla. 3d DCA 2000); [DE 153-1, ¶ 49].[13]

In support of its position that the record evidence creates material issues of fact regarding these elements, Canonlat cites generally to several pages of the statement of undisputed facts it filed in support of its motion for partial summary judgment. [DE 400, pp. 18-19] (citing to [DE 362, pp. 11-15]). These pages contain only three "undisputed facts" concerning van der Putten.

First, Canonlat asserts, "Defendant Jimenez and Defendant Van der Putten met with Difoto to brief the latter on Lantech's plan for filing an action against Canonlat in the Costa Rica courts . . . ." [DE 362, ¶ 13]. In support of this "fact", Canonlat cites to an excerpt of the deposition of Pedro Paris Coronado. [*Id.*]. The cited deposition testimony, however, does not even mention van der Putten [DE 363-8, p. 68], and Canonlat cites no other evidence that van der Putten ever met with a representative of the Difoto Defendants.

The two other facts that Canonlat puts forward to defend against van der Putten's motion, concern the Costa Rica action: (1) "On November 11, 2004, Defendant Lantech, through Jimenez and Van der Putten quietly filed a civil action in a Costa Rica court. . . ." [DE 362, ¶ 14], and "Lantech retained Defendant Van der Putten to prosecute its action." [DE 362, ¶ 15]. Neither of these facts connect van der Putten to the negotiations or consummation of the sale between Lantech and Easton Commerce, much less create any

---

[13] Paragraph 49 of the Third Amended Complaint contains a scrivener's error as it states that the purpose of the conspiracy was to defraud Lantech, rather than Canonlat. [DE 153-1, ¶ 49].

material issue of fact concerning whether van der Putten conspired with Jimenez and/or the Difoto Defendants to defraud Canonlat through that sale. Canonlat cites to no evidence that van der Putten had any involvement in the alleged fraudulent transfer to Easton Commerce, which Canonlat asserts was handled by the law firm of Lacle & Guttierez [DE 362, ¶ 20], or was somehow involved in coordinating the Costa Rica action with the sale. In fact, Jimenez testified, without dispute, that van der Putten played no role in the transaction between Easton Commerce and Lantech. [DE 351-1, pp. 6-7].

In other words, the sum total of Canonlat's evidence of van der Putten's involvement in a civil conspiracy to defraud Canonlat is that Lantech hired van der Putten as its attorney to file the Costa Rica action. No reasonable inference of an agreement between van der Putten and Jimenez or the Difoto Defendants to defraud Canonlat through the sale of Lantech's assets to Easton can be drawn from this, or any of the record evidence relied on by Canonlat. *See Lochin v. Verizon Florida LLC*, No. 8:09-cv-1535-T-23TBM, 2010 WL 4056034, * 6 (M.D. Fla. Oct. 15, 2010) (granting defendant summary judgment on claim of civil conspiracy where plaintiff provided insufficient evidence of a conspiracy).

I thus recommend that the Court grant van der Putten's motion for summary judgment on Count II.

### F.   Jimenez' Motion for Summary Judgment on Count II

Defendant Jimenez also moves for summary judgment on Count II, on the ground that the record contains no competent evidence to establish that he conspired with van der Putten

and/or the Difoto Defendants to defraud Canonlat. [DE 360, p. 4]. As discussed above, there is no evidence that Jimenez conspired with van der Putten to defraud Canonlat. Thus, Plaintiff's claim of civil conspiracy against Jimenez survives only if the record contains evidence sufficient to raise a material issue of fact: (a) that there was an agreement between Jimenez and the Difoto Defendants; (2) to defraud Canonlat; (3) an overt act was done in pursuance of the conspiracy; and (4) Canonlat was damaged as a result of the acts done under the conspiracy. *Lipsig*, 760 So.2d at 180; [DE 153-1, ¶ 49].[14]

In its opposition to the motion for summary judgment, Canonlat identifies the following facts as supporting its claim of a conspiracy against Jimenez: (1) Jimenez negotiated with Difoto on behalf of Lantech, knowing that Lantech owed Canonlat money; and (2) "van der Putten and Jimenez met with DiFoto's then CEO, Maria Eugenia Tabush, to discuss Lantech's plan to file an action in Costa Rica against Canonlat." [DE 400, p. 18-19].

The record evidence does not support this second "fact." Rather, the record evidence cited by Canonlat shows that Jimenez met with Maria Tabush in the summer of 2004 and, at some point before the execution of the Purchase and Sale Agreement, the Difoto Defendants learned that Lantech had commenced the Costa Rica action; it does not prove

---

[14] Paragraph 49 of the Third Amended Complaint contains a scrivener's error in that it states that the purpose of the conspiracy was to defraud Lantech, rather than Canonlat. [DE 153-1, ¶ 49].

anything more.[15] There is no evidence that Jimenez and Tabush discussed Lantech's plan to sue Canonlat in Costa Rica, much less entered into an agreement to defraud Canonlat through the sale of Lantech and the filing of the Costa Rica action.

The record also fails to show that the dispute between Canonlat and Lantech had any bearing on the Difoto Defendants' decision to create Easton Commerce as the vehicle to enter into the Purchase and Sale Agreement with Lantech, again undercutting any inference that there was an agreement to structure the sale transaction using Easton Commerce in order to defraud Canonlat. [DE 399-1, p. 18].

In sum, the record evidence shows: (1) efforts by Jimenez to enter into an arms length agreement for a bulk asset transfer between Lantech and Difoto, (2) knowledge by the Difoto Defendants of the ongoing litigation between Lantech and Canonlat before the execution of the Purchase and Sale Agreement, and (3) the fact that Difoto did not consider Lantech's debt to Canonlat in structuring the transaction through Easton Commerce. No reasonable inference of an agreement between Jimenez and Difoto to defraud Canonlat through the sale of Lantech's assets to Easton can be drawn from this evidence. *See Lochin*, 2010 WL 4056034, * 6.[16] I recommend that the Court grant Jimenez' motion for summary judgment

---

[15] According to Canonlat's statement of undisputed facts, the Costa Rica action was initiated on November 11, 2004, and the agreement between Lantech and Easton was entered into on December 7, 2004. [DE 362, ¶¶ 14, 19].

[16] As with van der Putten, the parties engage in extended discussions of the application of the intracorporate conspiracy doctrine, including a dispute over the admissibility of an affidavit by Jimenez that purports to "correct" his earlier deposition testimony concerning whether he personally guaranteed a debt by Lantech. As already noted, Canonlat does not allege that Jimenez conspired

on Count II.

### G.    The Parties' Motions for Summary Judgment on Piercing the Corporate Veil

In Count III, Canonlat brings a claim against Jimenez, to pierce the Lantech corporate veil, and thereby seeks to hold Jimenez liable for Lantech's actions.[17]   [DE 153-1, p. 12]. Both Canonlat and Jimenez have cross-moved for summary judgment on this Count. [DE 362, p. 29; DE 360, p. 10].  As an initial matter, Jimenez argues that Costa Rica law should govern the standard for piercing the corporate veil, because Lantech is incorporated under the laws of Costa Rica. [DE 360, p. 10]. Moreover, Jimenez contends "[b]ecause Plaintiff has improperly maintained its claim under Florida law rather than Costa Rica, Plaintiff's claim must be dismissed." [DE 360, p. 11].

As already discussed, a party that argues that foreign law applies, here Lantech, bears the burden of pleading and proving that law. Lantech fails, however, to provide any evidence of Costa Rica law regarding corporations or piercing the corporate veil.  Without this information, it is impossible for the Court to conduct a choice of law analysis, which requires as an initial matter a determination of the laws of the competing jurisdiction in order to ascertain whether a conflict exists, or whether the law of the foreign jurisdiction violates Florida public policy.  Thus, the Court applies Florida law.

---

with Lantech.  For this reason, I do not consider this argument.

[17] Piercing the corporate veil is not a cause of action, but rather a theory that supports the imposition of liability onto a party for the acts of a third party.

Under Florida law, to pierce the corporate veil, a party must prove:

(1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation;

(2) the corporate form must have been used fraudulently or for an improper purpose; and

(3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Gasparini v. Pordomingo*, 972 So.2d 1053, 1055 (Fla. 3d DCA 2008).

The undisputed facts establish that Jimenez is not a shareholder of Lantech. Rather, Jimenez owns an interest in Rapipunto Internacional, S.A., which owns a 20% interest in Rapunto, S.A., which owns a 25% interest in Dimo Profesional, S.A., which owns a 25% interest in Edificio Jimenez, S.A., which then owns a 25% interest in Lantech. [DE 360, p. 13].

Canonlat contends that Florida law allows piercing of the corporate veil to hold an officer or director personally liable for the acts of a corporation, even if that person is not a shareholder. [DE 421, p. 6]. The only case relied on by Canonlat, *In re Bailey*, 112 B.R. 449 (M.D. Fla. 1990), does not support this proposition because the debtor in that case, who was held responsible for the debts of a corporation, was the president and sole shareholder of the corporation. *Id.* at 450 (debtor, Bailey, was "president and sole shareholder of International"; creditor sought to pierce corporate veil "in order to impose personal liability on the Debtors as officers and sole shareholders of the corporation.").

24

Because it is undisputed that Jimenez is not a shareholder in Lantech, as is required to pierce the corporate veil under Florida law, I recommend that the Court grant Jimenez' motion for summary judgment on Count III and deny Canonlat's motion for summary judgment on that count.

## H.     The Difoto Defendants' Motion for Summary Judgment on Statute of Limitations

The Difoto Defendants have moved for summary judgment on Counts I and II, fraudulent transfer and civil conspiracy, on the ground that Canonlat's claims against the Difoto Defendants are time-barred. [DE 358, pp. 7-10]. Canonlat, in turn, has moved for summary judgment against the Difoto Defendants on Count I. [DE 362, pp. 20-29]. Because I find that the claims are barred by the statute of limitations, I do not address Canonlat's motion for summary judgment

### 1.     Fraudulent transfer

The fraudulent transfer statute that forms the basis of Canonlat's claim in Count I contains a two-pronged statute of limitations. Claims must be brought either: (1) within four years after the transfer was made or the obligation incurred or, if later, (2) within 1 year after the transfer or obligation could reasonably have been discovered by the claimant. Fla. Stat. § 726.110.

The Purchase and Sale Agreement between Lantech and Easton Commerce was entered into on December 7, 2004 [DE 364-2, p. 1], and Canonlat concedes that, at the latest, it learned of transaction as of January 2007. [DE 362, ¶ 22]. Thus, under the Florida statute

25

of limitations, Canonlat had to bring its fraudulent transfer claim against the Difoto Defendants before December 7, 2008 (four years after the Agreement was entered into), which is the latter of two options presented by the statute.[18]

Canonlat filed its original complaint in this action on May 27, 2008, naming only Lantech, Jimenez and van der Putten as defendants. [DE 1]. On May 8, 2009 - after the deadline for filing stated above - Canonlat filed a Corrected Second Amended Complaint, for the first time naming some of the "Difoto Defendants": Grupo Difoto S.A., f/k/a Distribuidora Fotografica, S.A., and Documentos y Digitales Difoto, S.A. [DE 128]. On January 11, 2010, Canonlat filed a Third Amended Complaint, adding two more "Difoto Defendants": Easton Commerce, S.A. and Documentos y Digitales, S,A, and correcting the name Distribuidora Fotografica, S.A. a/k/a Grupo Difoto S.A. [DE 153-1; 154].

Canonlat undisputedly did not bring its fraudulent transfer claim against any of the Difoto Defendants within four years of Lantech and Easton Commerce entering into the Purchase and Sale Agreement and, thus, the analysis would appear to end there in favor of the Difoto Defendants. But Canonlat argues that the record evidence creates a genuine issue of material fact as to the date of the actual transfer of assets from Lantech to Easton Commerce, which forecloses summary judgment. [DE 401, p. 20].

In support of its argument that there is a material issue of fact regarding the date of

---

[18] Arguably, Canonlat reasonably could have discovered the transfer or obligation before January 12, 2007, but because the other basis for calculating the limitations period yields a later cut off date, the Court need not address the date of discovery.

transfer, Canonlat points out that on October 25, 2005, Lantech and Difoto executed an agreement that settled some issues regarding underperforming assets. Thus, Canonlat argues, the allegedly fraudulent transfer was not completed until then, and therefore the statute of limitations did not begin to run until that date. [DE 401, p. 20]. Canonlat then reasons that the Second Amended Complaint, which added the first two Difoto Defendants, was timely because it was filed on May 8, 2009, less than four years after October 25, 2005. Thus, Canonlat contends, the real issue is whether the Third Amended Complaint, which added the remaining Difoto Defendants, relates back to the Second Amended Complaint. [DE 401, pp. 21-26].[19]

I reject the initial premise of Canonlat's argument; namely, that there is a material issue of fact regarding the date of the transfer of assets. Until now, Canonlat has consistently maintained that the fraudulent transfer giving rise to its claim in Count I was the December 7, 2004, Purchase and Sale Agreement. In its Third Amended Complaint, it alleges that the Purchase and Sale Agreement constituted a "de facto merger" between Lantech and Difoto. [DE 153-1, ¶ 24]. More recently, in its statement of undisputed facts in support of its own motion for partial summary judgment, under the heading "Lantech Fraudulently Transfers Its Assets to DiFoto," Canonlat sets forth as an undisputed fact that under terms of the December 7, 2004 Purchase and Sale Agreement, Difoto acquired "*all* of Lantech's assets."

---

[19] Canonlat does not argue that the claims against the Difoto Defendants in the Second Amended Complaint relate back to the original complaint.

[DE 362, ¶¶ 23-25] (emphasis in original). Thus, the position Canonlat now takes, is an about face.

Canonlat's argument, that the Purchase and Sale Agreement does not indicate the date on which those assets were "physically" transferred [DE 401, p. 19-20], and that without this information we can not know when the transfer occurred, is unpersuasive. The plain language of the Purchase and Sale Agreement makes clear that the transfer of ownership of the assets that forms the basis of Canonlat's fraudulent transfer claim took place between Lantech and Easton on December 7, 2004. [DE 364-2, pp. 6-7]. Moreover, Canonlat's argument that the October 25, 2005 agreement is an extension of the Purchase and Sale Agreement, and that it somehow retroactively delayed the transfer of assets under the first agreement, has no factual support. By its own terms, the October 25, 2005 agreement addresses a separate matter: a dispute that arose between Lantech and Difoto after the consummation of the Purchase and Sale Agreement. [DE 401-2, p.5].

The Florida Uniform Fraudulent Transfer Act addresses the timing of a transfer. The transfer of the type of assets at issue here occurs when the "transfer is so far perfected that a creditor on a simple contract cannot acquire a judicial lien otherwise than under the [UFTA], that is superior to the interest of the transferee." Fla. Stat. § 726.107(1)(b). The UFTA further provides that "if applicable law does not permit the transfer to be perfected as provided in subsection (1), the transfer is made when it becomes effective between the debtor and the transferee." Fla. Stat. § 726.107(3). Canonlat does not address this statutory

definition of transfer.

The asset transfer was made in Costa Rica, and thus it would appear that it could not be perfected under Florida law; accordingly, section 726.107(3) would control the effective date of the transfer. The plain language of the Purchase and Sale Agreement makes clear that the transfer of ownership of the assets that forms the basis of Canonlat's fraudulent transfer claim took place between Lantech and Easton Commerce on December 7, 2004. [DE 364-2, pp. 6-7]. This brings us back to the conclusion noted earlier, that the four-year statute of limitations began to run on this date, and expired before Canonlat brought its first claim against any Difoto Defendants. For this reason, Canonlat's claim under Count I against the Difoto Defendants is barred by the statute of limitations.

Accordingly, I recommend that the Difoto Defendants' motion for summary judgment on Count I be granted and Canonlat's motion for summary judgment against the Difoto Defendants on that Count be denied.

### 2. Civil Conspiracy

The Difoto Defendants argue that Count II, civil conspiracy, which also has a four year statute of limitations (Fla. Stat. § 95.11),[20] is similarly barred, since Canonlat's alleged damages from the asset sale would have to have accrued on the effective date of the sale. [DE 358, p. 9]. Florida law computes the time when the statute of limitations on a claim

---

[20] In Florida, claims for civil conspiracy are governed by Fla. Stat. 95.11(3)(o). *Armbrister v. Roland Inter'l Corp.*, 667 F.Supp. 802, 809 (M.D. Fla. 1987)

begins to run as "... the time the cause of action accrues," which is "when the last element constituting the cause of action occurs." Fla. Stat. § 95.031(1).

For a claim of civil conspiracy, the last element constituting the cause of action "will necessarily be injury to the plaintiff." *Armbrister v. Roland Inter'l Corp.*, 667 F.Supp. 802, 809 (M.D. Fla. 1987). The statute of limitations triggered by injury to a plaintiff "begins to run when the injury commences or first appears, not when it recurs." *Id.* In particular, "where, as here, the plaintiff's injuries, though [allegedly] extending over a period of years, are set in motion by a contract. . . . the plaintiff's right to seek redress arises when the injury first occurs." *Id.* According to Canonlat's theory of liability, it was first injured by the civil conspiracy on December 7, 2004, when Lantech and Easton entered into the Purchase and Sale Agreement, effectively rendering Lantech "an assetless shell" and making it impossible for Canonlat to recover the money owed to it by Lantech. [DE 362, p. 7].

Thus, the statute of limitations on Canonlat's civil conspiracy claim began to run on December 7, 2004, the date of the initial injury to Canonlat. Because Canonlat first named the Difoto entities as defendants in May 2009, after the four year statute of limitations had run, its claim for civil conspiracy is barred and the Difoto Defendants are therefore entitled to summary judgment on Count II.

## I.    Defendants' motion for summary judgment on damages

All Defendants move for summary judgment on Canonlat's claim for damages in the amount of the attorneys' fees it incurred in the Costa Rica action, *Canon I* and this action.

Defendants correctly cite the Court to the American Rule, that a party can recover fees only if there is a statutory or contractual basis for the award of fees. [DE 357, pp. 13-14; 358, pp. 10-11; 360, pp. 15-16; 361, p. 13 ]. Canonlat has pled no such entitlement to recover its attorneys' fees, and thus it would appear that the question is closed. The Lantech Defendants also argue that the claim for attorneys' fees incurred in the Costa Rica action and *Canon I* is barred by the doctrine of collateral estoppel. [DE 357, pp. 15-20; 360, pp. 15-16; 361, p. 13]. If the Court adopts my recommendations here, that Defendants' motions for summary judgment be granted on other grounds, it need not reach the issue of damages. However, in the interest of completeness, I also address these arguments and conclude, as a matter of law, that Canonlat is not entitled to recover its attorneys' fees.

For the first time, in its opposition to the summary judgment motions, Canonlat argues that it is entitled to its attorneys' fees under the wrongful act doctrine, which provides that "where a defendant committed a wrong toward the plaintiff, and the wrongful act has caused the plaintiff to litigate with third persons, the wrongful act doctrine permits the plaintiff to recover, as an additional element of damages, plaintiff's third party litigation expenses." [DE 400, p. 17]. Thus, Canonlat asserts, it "may recover as damages its attorneys' fees for litigating its fraudulent transfer claim against Difoto pursuant to the wrongful act doctrine. Canonlat's attorneys' fees for defending the Costa Rica action and prosecuting *Canon I*, in contrast, are sought as damages under Canonlat's civil conspiracy claim against the Difoto Defendants, Jimenez and van der Putten." [DE 400, pp. 17-18].

31

In other words, Canonlat is arguing for two different applications of the wrongful act doctrine against two different sets of Defendants:  (1) for the fees in this action, against Lantech; (2) for the fees in *Canon I* and the Costa Rica action, against Difoto, Jimenez and van der Putten.

In evaluating Canonlat's argument, I am mindful that the "wrongful act doctrine is a very narrow exception to the American Rule." *CC-Aventura, Inc.* v. Weitz *Co.,* No. 06-21598, 2008 WL 5143248, * 6 (S.D. Fla. Dec. 5, 2008).

Regarding Canonlat's claim for its fees in this action against Lantech, in *Johnson Law Group v. Elimadebt USA, LLC*, No. 09-CV-81331, 2010 WL 2035284 (S.D. Fla. May 24, 2010), the Court rejected a claim for attorneys' fees under a similar factual scenario.  There, the plaintiff initially was sued by two Elimadebt entities, which suit ended in a voluntary dismissal.  The plaintiff then sued the same Elimadebt entities, as well as several other defendants, for malicious prosecution and civil conspiracy, alleging that the defendants conspired to bring the initial, frivolous lawsuit against the plaintiff.  In rejecting the plaintiff's claim for the attorneys' fees incurred in the case at bar, the Court explained: "The wrongful act doctrine, however, only applies to the costs of litigation with third parties, not subsequent litigation with the defendants who committed the wrongful act." *Id.* at * 8.  Thus, as a matter of law, Canonlat cannot recover its attorneys' fees for the present action from Lantech pursuant to the wrongful act doctrine.

Nor can Canonlat rely on the wrongful act doctrine to recover the fees it incurred in

32

prosecuting *Canon I* or the Costa Rica action. Here, Canonlat asserts that it is seeking its fees for defending the Costa Rica action and prosecuting *Canon I* against the Difoto Defendants, Jimenez and van der Putten. To recover under the wrongful act doctrine, a wrongful act by these Defendants must have precipitated Canonlat's involvement in the prior actions. Canonlat alleges two "wrongful" acts: (1) the filing of the Costa Rica action and (2) the transfer of assets from Lantech to Easton. Neither of these acts will support Canonlat's claim for the fees incurred in *Canon I* and the Costa Rica action.

The Eleventh Circuit, in *Canon I*, rejected Canonlat's argument that Lantech's filing of Costa Rica action was wrongful [*see* DE 153-1, ¶ 39], and thus this act cannot form the basis of a claim for either the fees incurred in Costa Rica or in *Canon I*. Moreover, the record contains no evidence that the transfer of assets from Lantech to Easton caused Canonlat to become involved in the Costa Rica action; indeed, the Costa Rica action was commenced before the transfer. Finally, although Canonlat received a consent judgment for the amount owed by Lantech under the distribution agreement in *Canon I*, Canonlat does not argue that it was forced to sue Lantech on this debt because of the transfer between Lantech and Easton. To the contrary, Canonlat asserts that it only learned of the transfer while prosecuting *Canon I*. [DE 362, p. 13, ¶ 22]. Thus, Canonlat cannot recover its attorneys' fees for *Canon I* and the Costa Rica action against Jimenez, van der Putten and the Difoto Defendants under the wrongful act doctrine.

### III.    Recommendation

Based on the foregoing, I RECOMMEND that the Court:

1.     **DENY** Plaintiff's Motion for Partial Summary Judgment as to Liability on Counts I and III of the Third Amended Complaint [DE 362];

2.     **GRANT** Defendant Lantech's Motion for Summary Judgment [DE 357], granting summary judgment for Lantech on Count I;

3.     **GRANT** Defendant Manuel Jimenez' Motion for Summary Judgment [DE 360], granting summary judgment for Jimenez on Counts II and III;

4.     **GRANT** Defendant Robert C. van der Putten Reyes' Motion for Summary Judgment [DE 361], granting summary judgment for van der Putten on Count II; and

5.     **GRANT** Defendants, Documentos y Digitales, S.A., Easton Commerce, S.A., and Documentos y Digitales Difoto, S.A.'s Motion for Summary Judgment [DE 358], granting summary judgment for these defendants on Counts I and II.

The parties may file written objections to this Report and Recommendation with the Honorable Adalberto Jordan within **fourteen days** of the date of this Report and Recommendation. Failure to timely file objections shall bar the parties from attacking on appeal any factual findings contained herein. *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988).

### IV.    Order

Based on the foregoing, I ORDER that:

Plaintiff's motions to conduct further discovery pursuant to Federal Rule of Civil Procedure 56(f) [DE 404; 406], and the requests for oral argument from Plaintiff and the Difoto Defendants [DE 409; 414], are **DENIED**.

RESPECTFULLY RECOMMENDED and ORDERED in chambers at Miami, Florida, this 24th day of January, 2011.

CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE


cc:    The Honorable Adalberto Jordan
       All counsel of record