N THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 08-21518-Civ-JORDAN/McALILEY

CANON LATIN AMERICA, INC.,
a Florida Corporation,

      Plaintiff,

v.

LANTECH (C.R.), S.A., a Costa Rica
company, MANUEL JIMENEZ, individually,
and ROBERT C. VAN DER PUTTEN
REYES, individually,

      Defendants.

_____/

**LANTECH DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS
TO REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE [D.E. 463]**

      Defendants Lantech (C.R.), S.A., Manuel Jimenez, and Robert C. van der Putten (the

"Lantech Defendants") hereby respond to Plaintiff's Revised Appeal from and Objections to

Report and Recommendations of the Magistrate Judge (the "Revised Appeal").  D.E. 463.

      On May 27, 2008, on the heels of three years of litigating *Canon I*, Plaintiff Canon Latin

America ("Canon") instituted this action against the Lantech Defendants for fraudulent transfer

and conspiracy, premised entirely on unfounded, hypothetical allegations.  More than two and a

half years later, Canon complains that it was deprived of the opportunity to cull sufficient

evidence to raise a genuine issue of material fact regarding its claims.  In her Report and

Recommendation ("R&R"), Magistrate Judge McAliley found that Canon had sufficient

opportunity to take discovery and that it failed to conclusively establish any basis for enlarging

the discovery period a second time.  R&R at pp. 7-8.  In so doing, the Magistrate Judge did not abuse her discretion.

Magistrate Judge McAliley also correctly concluded that each of Canon's substantive claims fail as a matter of law.  First, Canon's fraudulent transfer claim against Lantech (Count I) is time barred.  Second, Canon's civil conspiracy claim against Messrs. Jiménez and van der Putten (Count II) fails because Canon presented no evidence that these defendants agreed or planned to defraud Canon.  Finally, Canon's piercing the corporate veil claim against Mr. Jiménez (Count III) fails as a matter of law because he is not a Lantech shareholder.  Canon's inability to substantiate even the most basic allegations establishes the purely speculative nature of its complaint.  Canon cannot blame the utter lack of evidence on a purported need for more discovery.  *See Lamar Printing, Inc. v. Minuteman Press Intern*., No. C 81-05 A, 1981 WL 2080, *3 (N.D. Ga. May 14, 1981) ("a plaintiff should not be allowed to file a suit and then conduct discovery to see if he, in fact, has a case. … Discovery under the Federal Rules of Civil Procedure is intended to narrow the scope of the issues and to prevent surprise at trial; it is not intended to allow a plaintiff to go on a fishing expedition to see if the speculative complaint that he has filed has any basis in fact.").

## I.
### MAGISTRATE JUDGE McALILEY DID NOT ABUSE HER DISCRETION IN DENYING CANON'S RULE  56(f) MOTION TO RE-OPEN DISCOVERY

**A.**      **Standard of Review:  "Clearly Erroneous or Contrary to Law"**

Magistrate Judge McAliley's denial of Canon's motion to conduct further discovery pursuant to Federal Rule 56(f) is a non-dispositive matter.  *Slater v. Progress Energy Serv. Co.*, LLC, 2010 WL 1408431 (M.D. Fla., April 6, 2010).  Accordingly, the ruling must be affirmed unless "it has been shown that the magistrate judge's order is clearly erroneous or contrary to

law." *Id.*; *Tolz v. GEICO Gen. Ins. Co.*, Case No. 08-80663, 2010 U.S. Dist. LEXIS 6709, *7 (S.D. Fla. Jan. 27, 2010) (citing 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a) and Local Mag. Rule 4(a)(1)).   The 'clearly erroneous or contrary to law' standard of review "is extremely deferential."   *Id.*; [D.E 427].   A finding is clearly erroneous only if "the reviewing court, after assessing the evidence in its entirety, is left with a definite and firm conviction that a mistake has been committed."   *Id.* at *7-8 (citing *Krys v. Lufthansa German Airlines*, 119 F.3d 1515, 1523 (11th Cir. 1997)); *see also Ford v. Haley*, 195 F.3d 603, 617 (11th Cir. 1999).   "The mere fact that a reviewing Court might have decided the issue differently is not sufficient to overturn a decision when there are two permissible views of the issue."   *Tolz*, 2010 U.S. Dist. LEXIS 6709 at *8 (collecting cases).   With respect to the "contrary to law" variant of the test, an order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure.   *Id.*

## B.      Rule 56(f) Requires Specificity

A party seeking to invoke Rule 56(f) to delay resolution of a motion for summary judgment must "show by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition."   Fed. R. Civ. P. 56(f).   Because the burden on a party resisting summary judgment is not a heavy one, "one must conclusively justify his entitlement to the shelter of rule 56(f) by presenting specific facts explaining the inability to make a substantive response" and by "specifically demonstrating how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact."   *Wingster v. Head*, 318 Fed. Appx. 809, 813 (11th Cir. 2009) (citing *Sec. & Exch. Comm'n v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir. 1980)).   The party seeking the enlargement must show how the additional discovery will defeat the summary judgment motion

SQUIRE, SANDERS & DEMPSEY (US) LLP

by creating a genuine dispute as to a material fact and "may not simply rely on vague assertions that additional discovery will produce needed but unspecified facts, particularly where . . . ample time and opportunities for discovery have already lapsed."  *Id*. at 813-14 (internal citations and quotation marks omitted); *see also Contemporary Mission, Inc. v. New York Times Co*., 665 F. Supp. 248, 269 (S.D.N.Y 1989) (Rule 56(f) is not a license for a fishing expedition; plaintiffs need to demonstrate that the material they expect to develop by further discovery is probably available and is potentially favorable to them).

**C.      Magistrate Judge McAliley Acted Within Her Discretion in Finding that Canon Failed To Conclusively Establish Its Entitlement to Additional Discovery**

Canon's Rule 56(f) motion did little more than demand additional blanket discovery. D.E. 400, 404.  Canon failed to conclusively demonstrate that such discovery would favor Canon and create a genuine dispute, and moreover, the record did not establish that Canon had diligently pursued discovery.

1.      *No showing that additional discovery will create dispute*

Canon identified only one specific issue for which it sought additional discovery from the Lantech Defendants: Mr. Jiménez's affidavit testimony in which he clarified that he did not personally guarantee one of Lantech's loans.  However, notably, testimony on this subject will not defeat summary judgment by creating a genuine issue of material fact: Magistrate Judge McAliley did not rely upon that affidavit in resolving the summary judgment motions.  D.E. 454, p.7.  Moreover, Canon offered no basis for the Magistrate Judge to conclude that deposing Mr. Jiménez on this topic would produce facts different from those set forth in his affidavit.

Canon also asserted its general desire to take "substantive" depositions of the Lantech Defendants.  This is precisely the type of vague assertion upon which a party resisting summary

judgment may not rely. *Wingster*, 318 Fed. Appx. at 813-14. In short, Canon did nothing more than "rely on vague assertions that additional discovery will produce … unspecified facts." *Id*. Thus, Magistrate Judge McAliley did not clearly err or abuse her discretion in denying Canon's Rule 56(f) motion.

      2.    *Canon did not undertake discovery diligently*

The grant or denial of a continuance under Rule 56(f) lies within the sound discretion of the court. *Barfield v. Brierton*, 883 F.2d 923, 931 (11th Cir. 1989); *Zamora Radio, LLC, v. Last.FM, Ltd.*, No. 09-20940, 2010 U.S. Dist. LEXIS 136210, *21 (S.D. Fla. Nov. 5, 2010). Under Rule 56(f), Canon was required to establish that it was diligent in seeking the discovery requested. *See Barfield*, 883 F.2d at 931-33 & n.11. If the explanation is insufficient or unpersuasive, the court may refuse to stay consideration of the motions. *Id.* Magistrate Judge McAliley did just that, having carefully reviewed the record and found that the parties had a broad and fair opportunity to engage in discovery. R&R at p. 7. To be sure, Canon commenced this action in May 2008 and had more than two years to obtain the information it needed before the discovery deadline expired in August 2010. Canon's attempt to blame the defendants for its shortcomings is unpersuasive and unsupported by the record.

**The Purchase and Sale Agreement.** Canon first complains that it did not receive the Purchase and Sale Agreement until May 2010, Revised Appeal at p. 14, conspicuously omitting the fact it did not serve a request for production of merits documents until April 2010. *See* D.E. 243. Canon also implies that Lantech wrongfully withheld the Purchase and Sale Agreement in *Canon I*, suggesting that Lantech's prior objection based on a confidentiality was a farce. However, the plain language of the document itself reveals that Lantech was under a duty to not

disclose any information regarding the Purchase and Sale Agreement.[1]  Canon never sought judicial intervention to overcome the confidential status of the agreement.

**Document Production.**  Canon concedes, as it must, that it learned Lantech's documents were in Difoto's possession in Costa Rica as early as January 2007.  Yet Canon inexplicably waited until the summer of 2010 to inspect the documents, and now complains that it did not find the documents it wanted, Revised Appeal at p. 14, offering no explanation for why this is Lantech's fault.

**Depositions of the Lantech Defendants.**  Last, Canon complains that it was not afforded an opportunity to depose the Lantech Defendants regarding the merits of the fraudulent transfer claim.  The record indicates otherwise.  It is undisputed that Canon has deposed Mr. Jiménez on three occasions and has also deposed Mr. van der Putten.  Magistrate Judge McAlilely "reviewed all the transcripts provided by the parties" and, based on that review, found it was "clear that at these depositions Canonlat engaged in significant discovery regarding the merits."  R&R at p. 8. Canon defends that those were "jurisdictional" depositions or that they occurred in *Canon I*.  But the labeling of the depositions is not determinative, and does not trump Magistrate Judge McAliley's close review of the subjects covered during those depositions.

To be sure, Canon's own corporate representative admitted under oath that Canon derived all of the facts in support of its complaint from the depositions of Mr. Jiménez and Mr. van der Putten.  D.E. 349-1, Crosa dep., at 150:13-20; 151:16-22.  Yet Canon now argues that those depositions did not yield sufficient information to create a genuine dispute of material fact.

---

[1] *See* D.E. 356-2, at p. 47, Clause 19 ("The parties hereto must mutually keep confidential any and all information and/or documents related to this contract and the contracts derived herefrom, including after they end. ... [w]ith the express exception of all the information that must be disclosed due to a legal order.  The obligation of confidentiality will remain in place for the parties for **four years**.")

SQUIRE, SANDERS & DEMPSEY (US) LLP

Canon also engages in a contrived account of the parties' attempts to schedule the Lantech Defendants' depositions. It is undisputed that the Lantech Defendants offered to produce the witnesses in Costa Rica on specified dates, notwithstanding Canon's failure to provide timely notice or consult the parties' or counsels' schedules. Revised Appeal at p. 11. Canon declined the Lantech Defendants' offer, however, because it preferred to take other depositions instead. D.E. 452-2. Counsel for the Lantech Defendants repeatedly requested confirmation that the depositions would proceed on the given dates, but Canon refused to do so until it was too late. D.E. 452-3.[2]

**Canon had ample opportunity to complete discovery.** Canon served a plethora of interrogatories, requests for admissions and requests for production upon each of the Lantech Defendants. But rather than timely depose witnesses, Canon instead filed meritless discovery motions and three unsuccessful appeals of Magistrate Judge McAliley's discovery rulings. More fundamentally, this Court previously extended the discovery deadline and advised that the case would proceed to trial without further delay. D.E. 175, 190, 229. Canon was plainly on notice that it should hasten its discovery efforts, but it failed to act accordingly.

As demonstrated above, the record substantially supports Magistrate Judge McAliley's decision to deny Canon's motion for additional time to take discovery. The Magistrate Judge did not abuse her discretion in finding that Canon failed to "conclusively justify" its entitlement to the shelter of Rule 56(f). Accordingly, this Court should adopt Magistrate Judge McAliley's recommendation and deny Canon's Rule 56(f) motions.

---

[2] The Lantech Defendants are loathe to burden this Court with a tedious recitation of the parties' dispute over deposition scheduling, and respectfully refer the Court to their Opposition To Plaintiff's Motion for Continuance of Trial [D.E. 452] for a full account of their efforts to timely complete the depositions.

7

## II.
## STANDARD OF REVIEW FOR DISPOSITIVE RULINGS

A district court reviews a magistrate judge's recommendations on a dispositive motion *de novo*.  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b).  The district court may address only those portions of the magistrate judge's disposition to which a "specific, written objection" has been properly made.  *Id*; *Macort v. Prem, Inc.*, 208 Fed. Appx. 781, 784-785 (11th Cir. 2006) (no valid objection to magistrate's report and recommendation where party failed to specifically identify objectionable portions of recommendation and specific basis for its objections).  "While the standard of review is *de novo*, a district judge need not re-assess every single finding and determination, for the statute permits the district court to give to the magistrate's proposed findings of fact and recommendations such weight as [their] merit commands, and the sound discretion of the judge warrants without violating a party's due process rights, so long as the ultimate decision is made by the district court."  *Jean-Baptiste v. Gutierrez*, 680 F. Supp. 2d 1318, 1321-22 (S.D. Fla. 2010) (internal quotations omitted) (*citing U.S. v. Raddatz*, 447 U.S. 667, 683 (1980)), *rev'd on other grounds*, 627 F.3d 816 (11th Cir. 2010).

## III.
## THE MAGISTRATE JUDGE CORRECTLY CONCLUDED THAT CANON'S FRAUDULENT TRANSFER CLAIM AGAINST LANTECH IS TIME BARRED

**A.  Canon's Fraudulent Transfer Claim is Time Barred**

Canon's fraudulent transfer claim against Lantech is time barred: the parties' Distribution Agreement mandates that all claims between Canon and Lantech be brought within one year from the accrual of the cause of action:

> ANY SUIT BETWEEN THE PARTIES, OTHER THAN FOR PAYMENT FOR THE PURCHASE PRICE OF THE PRODUCTS OR FOR INDEMNIFICATION ... SHALL BE COMMENCED, IF AT ALL, **WITHIN ONE (1) YEAR** OF THE DATE THAT CAUSE OF ACTION ACCRUES.

D.E. 356-1, Distribution Agreement, ¶ 19 (emphasis added).   Magistrate Judge McAliley concluded that the broad and unambiguous limitations language in the Distribution Agreement ("Any suit") encompasses all types of claims between the parties, contractual or otherwise, including the fraudulent transfer claim.  D.E. 454, p. 14.  Canon does not object to this finding.

The Magistrate Judge also found that Canon's claim, first filed on May 27, 2008, was brought outside the one year limitation period.  The possible accrual dates are:

- December 2004 - the date of the asset sale which constitutes the alleged fraudulent transfer

- January 12, 2007 – the latest date on which Canon learned of the asset sale.

- February 1, 2007 - Canon unequivocally asserted its belief that the asset sale was fraudulent.

- March 5, 2007 - The *Canon I* Court entered the consent judgment regarding the debt in question.  *Canon I, D.E. 236.*

Using any one of those benchmarks as the date of accrual, Canon failed to commence this action within the one year limitation period.[3]

In sum, the limitations clause encompasses the fraudulent transfer claim, and that claim is time barred because it was commenced outside the one-year period.

**B.    Section 95.03, Florida Statutes is Inapplicable**

Canon argues that section 95.03, Fla. Stat. (2010) renders void the time limitation provision contained in its own Distribution Agreement.  The statute provides:

---

[3] Canon now passively argues that Magistrate Judge McAliley did not consider the possibility that the fraudulent transfer action accrued on July 31, 2007 – the date the Canon I Court entered final summary judgment.  Revised Appeal, p. 16 at n.7.  The Court should disregard Canon's attempt to use this date for two reasons.  First, it failed to raise this argument below.  *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) (affirming district court's decision to disregard arguments raised for the first time on appeal of magistrate's report).  Second, Canon sets forth no reason why the date of final summary judgment is the true accrual date.

> Any provision in a contract fixing the period of time within which an action *arising out of the contract* may be begun at a time less than that provided by the applicable statute of limitations is void.

Thus, the dispositive question is whether the fraudulent transfer claim is one "arising out of the contract." Magistrate Judge McAliley concluded that it is not. [D.E. 454, p. 16].

Contrary to Canon's assertion, Magistrate Judge McAliley's statutory interpretation did not rest on *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999). Rather, she first relied on the bedrock principle that "where the language of the statute is plain and unambiguous there is no need for judicial interpretation" R&R at p. 15 (citing *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 454 (Fla. 1992)). The Court must simply enforce that language. The phrase "an action arising under the contract" does not suggest an ambiguity. R&R at p. 15. As the Magistrate Judge found, the phrase plainly references a claim brought by a party to the contract to enforce the terms of that contract. R&R at p. 15-16. By contrast, a claim that one party to a contract fraudulently transferred its assets with the "intent to hinder, delay, or defraud" the other party to the contract arises *independently* of the contract.[4]

Magistrate Judge McAliley then referenced *Seifert* as persuasive authority supporting her interpretation of the plain language. Thus, *Seifert* was not a necessary component of the Magistrate Judge's conclusion; it merely lent additional support.

Lantech addresses the *Seifert* decision for the sake of completeness. In that case, the Florida Supreme Court analyzed whether the tort action before it was governed by an arbitration clause in the parties' contract that required arbitration of "any controversy or claim arising under

---

[4] By analogy, Lantech could not argue that the fraudulent transfer claim is barred by the economic loss rule. It is not a claim based on performance of the contract. Rather, it is a tort that occurred independent of the contract.

10

or related to this Agreement." 750 So. 2d at 635. The Court surveyed decisions from Florida and other jurisdictions and ultimately adopted the following framework for analysis:

> If the contract places the parties in a unique relationship that creates new duties not otherwise imposed by law, then a dispute regarding a breach of a contractually-imposed duty is one that arises from the contract. … If, on the other hand, **the duty alleged to be breached is one imposed by law in recognition of public policy and is generally owed to others besides the contracting parties,** then a dispute regarding such a breach is not one arising from the contract, but sounds in tort.

*Id*. at 640 (internal citation omitted) (emphasis added).

Applying the same framework here compels the conclusion that the fraudulent transfer claim does not "arise from" the Distribution Agreement. The alleged actionable conduct in question is Lantech's sale of its assets to Easton Commerce. The duty alleged to be breached is the duty not to engage in fraudulent transfers. This duty is not imposed by terms of the Distribution Agreement. Rather, it is imposed by law in recognition of Florida's public policy, codified in Florida Statutes sections 726.105 and 726.106, and it is generally owed to all creditors. Canon's fraudulent transfer claim does not seek to enforce any term of the Distribution Agreement. Thus, section 95.03 is inapplicable and the Court may enforce the limitations provision.

Canon leans heavily on *Burke v. Windjammer Barefoot Cruises*, 972 So. 2d 1108 (Fla. 3d DCA 2008) in an attempt to avoid *Seifert*'s framework. Canon's reliance is misguided. In *Burke*, the Third District Court of Appeal considered whether a breach of fiduciary duty arose from an employment agreement. *Id*. at 1111-12. In that case, the contract not only created the relationship between the parties but also outlined the very duties claimed to be breached. *Id*. at 1112. That was not true in *Seifert*, and, more significantly, it is not true here. The Distribution

11

Agreement does not define the manner in which Lantech could sell or otherwise dispose of its assets. *Burke* is therefore not analogous or applicable.

Canon's reliance on the Court's personal jurisdiction order is similarly misplaced. In that order [D.E. 126], this Court held that Lantech could be haled into Court in Florida for fraudulent transfer. The Court did not, however, conclude that the fraudulent transfer claim arises under the Distribution Agreement. In fact, the passage quoted by Canon references claims "arising from" the Distribution Agreement on the one hand, and claims based on a fraudulent scheme on the other, thus distinguishing between the two. Revised Appeal at p. 18.

In sum, Magistrate Judge McAliley correctly concluded that the fraudulent transfer claim is not one "arising out of the contract" between the parties, and thus section 95.03 does not void the one year limitation clause. Canon's fraudulent transfer claim clearly falls outside the one year period and therefore is barred as untimely. Accordingly, this Court should adopt Magistrate Judge McAliley's recommendation and enter summary judgment in favor of Lantech.

## C.       Lantech Did Not Waive Its Limitations Defense

Lantech did not waive its limitations defense. Canon ignores this Court's September 28, 2010 order granting Lantech leave to file an amended answer and affirmative defenses on or before October 12, 2010. [D.E. 378]. Lantech complied with this Court's order: on October 12th, Lantech filed, with this Court's permission, an amended answer and included an affirmative defense based on the limitations clause. [D.E. 392]. Canon cites no authority holding that a party that timely complies with a Court order allowing it to amend its affirmative defenses waives any defense not previously asserted. *Compare North Georgia Elec. Membership Corp. v. City of Calhoun*, 989 F.2d 429, 432 (11th Cir. 1993) (failure to assert affirmative defense not waived since motion to amend answer had been granted).

Significantly, the Eleventh Circuit endorses a liberal approach to waiver of affirmative defenses when there is no prejudice to the plaintiff. *Sweet v. Secretary, Dep't of Corrections*, 467 F.3d 1311, n.4 (11th Cir. 2006) (collecting cases). The purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it. *Blonder-Tongue Labs., Inc. v. University of Illinois Foundation*, 402 U.S. 313, 350 (1971). When a plaintiff has notice that an affirmative defense will be raised at trial, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice. *Hassan v. US Postal Service*, 842 F.2d 260, 263 (11th Cir. 1988). When the failure to raise an affirmative defense does not prejudice the plaintiff, the district court may consider the issue. *Id.*; *Sweet*, 467 F.3d at n.4 (statute of limitations properly considered where defendant raised it for first time on summary judgment).

Canon has never asserted that it suffered any prejudice as a result of Lantech's amended affirmative defenses. Nor does it attempt to argue that additional discovery on the limitations issue would yield a different result. Indeed, as demonstrated by the briefing, the limitations issue is based purely on textual interpretation. Thus, additional discovery would not alter the Court's analysis. Accordingly, Canon has suffered no prejudice and the Court may properly consider Lantech's limitations defense.

**D.     Lantech is not Estopped from Asserting a Limitations Defense**

Canon asserts for the first time in its Revised Appeal that Lantech is estopped from relying on a term in the Distribution Agreement because it filed its Law 6209 claim in Costa Rica despite a forum selection clause calling for venue in Florida. D.E. 463, p. 20. This argument fails for two reasons. First, this Court should disregard Canon's estoppel argument because it is raised for the first time on appeal of Magistrate Judge McAliley's Report and

Recommendation. *See Williams*, 557 F.3d at 1292 (affirming district court's decision to disregard arguments raised for the first time on appeal of magistrate's report and recommendation); *Armor Screen Corp. v. Storm Catcher*, No. 07-CV-81091, 2010 WL 1740697, *3 (S.D. Fla. Apr. 22, 2010) (declining to consider newly-raised arguments in objection to magistrate's order).

Second, the Eleventh Circuit has rejected Canon's argument that Lantech's filing of the Costa Rica action was wrongful. [D.E. 153-1, ¶ 39]. Moreover, forum selection clauses are unenforceable "if enforcement would contravene a strong public policy of the forum in which the suit is brought, whether declared by statute or by judicial decision." *The Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 8 (1972). Under Costa Rica public policy, the jurisdiction of Costa Rica tribunals to preside over local distributors' Law 6209 claim cannot be waived. D.E. 395-1 at p. 3: (Law 6209, Art. 7: "The jurisdiction of the Costa Rica courts of justice and the rights of the representative, distributor or manufacturer, by virtue of this law, cannot be waived"). Lantech's decision to lawfully exercise its rights cannot form the basis for estoppel.

## IV.
## MAGISTRATE JUDGE McALILEY CORRECTLY GRANTED SUMMARY JUDGMENT IN FAVOR OF ROBERT VAN DER PUTTEN

Canon's sole claim against Mr. van der Putten is for civil conspiracy. 153-1, p. 12, Count II. According to Canon, Mr. van der Putten and Mr. Jiménez:

> devised a scheme whereby Lantech would transfer its assets and liabilities to DiFoto in a de-facto merger while, at the same time, Lantech would retain its corporate identity in order to bring a lawsuit in Costa Rica against Canonlat.

*Id*. at ¶ 22. Canon further alleged that Mr. van der Putten "orchestrated the transfer." *Id*. at ¶ 24.

Mr. van der Putten moved for summary judgment as the unrefuted evidence affirmatively demonstrated that he was in no way involved in the sale of Lantech's assets to Easton Commerce

Case 1:08-cv-21518-WPD   Document 470   Entered on FLSD Docket 03/18/2011   Page 15 of 30

and that his role was strictly limited to representing Lantech in the Law 6209 action.  [D.E. 361].

To that end, Lantech cited to multiple excerpts of uncontested deposition testimony by Mr. van

der Putten and Mr. Jiménez.  *Id.* at pp. 5, 7-8, nn. 12, 14.  Thus, the burden shifted to Canon to

either set forth specific facts showing a genuine issue for trial or show that the materials cited do

not establish the absence of a genuine dispute.  Fed. R. Civ. P. 56(c)(l).

When Canon fails to make a sufficient showing on an essential element of its case with

respect to which it has the burden of proof, then the Court must enter summary judgment for Mr.

van der Putten.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "By its very terms, this

standard provides that the mere existence of some alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no *genuine* issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-48 (1986) (emphasis added).  As demonstrated below, Canon fell far short of its burden.

## A.  Canon Misconstrues the Evidentiary Threshold Governing Civil Conspiracy

Canon contends that it need prove only that Mr. van der Putten "knew of the scheme [to

defraud Canon] and, by circumstantial evidence, that he participated *in some way*."  D.E. 463,

p.21 (citing *Karnegis v. Oakes*, 296 So. 2d 657, 658 (Fla. 3d DCA 1974)). [5]  In other words,

Canon maintains that it does not bear the burden of proving that Mr. van der Putten ***agreed*** to

participate in a plan to defraud Canon; rather, it is sufficient that Mr. van der Putten knew

someone else was planning to do so, and, separately, that he somehow participated.   Canon's

contention is contrary to Florida law.

---

[5] Canon's reliance on *Karnegis* is misplaced.  Nowhere in the *Karnegis* decision does the court
hold that merely knowing about a conspiracy is sufficient if the defendant participates in some
way.

15

SQUIRE, SANDERS & DEMPSEY (US) LLP

A civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy. *Lipsig v. Ramlawi*, 760 So. 2d 170, 180 (Fla. 3d DCA 2000); *see also Raimi v. Furlong*, 702 So. 2d 1273, 1285 (Fla. 3d DCA 1994) (mere knowledge of the conspiracy is insufficient; there must be an actual knowing participation). Although a conspiracy may be proven by circumstantial evidence, this may be done "*only* when the inference sought to be created by such circumstantial evidence outweighs all reasonable inferences to the contrary." *Diamond v. Rosenfeld*, 511 So. 2d 1031, 1034 (Fla. 4th DCA 1987). It is improper to assume that parties participated in a conspiracy merely because they ultimately received some benefits. *Raimi*, 702 So. 2d at 1285; *Karnegis*, 296 So. 2d at 659.

**B.**     **Canon Failed To Present Specific Facts Demonstrating that Mr. van der Putten Conspired To Defraud Canon**

In the briefing before Magistrate Judge McAliley, Canon failed to present specific facts rebutting Mr. van der Putten's motion for summary judgment. It now raises new arguments and purported facts, but still fails to point to any record evidence that warrants denial of summary judgment.

Canon asserts that "[t]he record contains substantial evidence that Van[sic] der Putten was intimately involved with the transfer to Difoto, and that he had knowledge that the transfer rendered Lantech insolvent at a time when it owed substantial debts to Canonlat." D.E. 463, p. 21. Mr. van der Putten addresses each of Canon's new "facts" below.

SQUIRE, SANDERS & DEMPSEY (US) LLP

1.    *Lantech's interrogatory responses*

Canon first points to the fact that Mr. van der Putten signed a verification page for interrogatories answered by Lantech in March 2008.  D.E. 463, p. 22, citing D.E. 398-1, p. 10 The interrogatory responses describe the asset and purchase sale and explain that Lantech was an inactive company with no receivables or real property.  D.E. 398-1, p. 10.  According to Canon, this confirms Mr. van der Putten's knowledge of the asset sale.

Canon's reliance on those interrogatories is fundamentally flawed.  Mr. van der Putten verified only that he participated in preparing the answers, not that he was the person who supplied the answers or the person with first hand knowledge of the facts.  Canon deposed Mr. van der Putten at length on this specific issue, and he explained that all of the information contained in the answers to interrogatories came from Lantech.  *See* D.E. 354 at 163:13-175:7. Moreover, the verification page was signed in March 2008.  Thus, the verification in no way constitutes evidence that Mr. van der Putten was involved in the asset sale at the time it occurred.

2.    *Mr. van der Putten's Special Power of Attorney*

Lantech granted Mr. van der Putten a Special Power of Attorney.[6]  The undisputed testimony established that the Special Power of Attorney expressly limits Mr. van der Putten's powers on behalf of Lantech to doing that which is necessary to litigate the Costa Rica action. D.E. 354-1, R. van der Putten dep., at 53:21-56:6.  This included his assistance in *Canon I* which was directly related to the Law 6209 claim.  D.E. 350-1, M. Jiménez 1/12/2007 dep., at 204:24-206:9.  Mr. van der Putten was never granted a general power of attorney from Lantech.  D.E. 354-1, at 56:1-6; D.E. 352-1, M. Jiménez 1/7/2009 dep., at 23:21-25.

---

[6] A copy of the Special Power of Attorney is filed at D.E. 348.

There is no evidence that the Special Power of Attorney permitted Mr. van der Putten to sell Lantech's assets. Even if Mr. van der Putten had that authority (which he did not), Canon does not present any evidence that he exercised it. Mr. Jiménez testified, without dispute, that Mr. van der Putten played no role in the transaction between Lantech and Easton Commerce. D.E. 351-1, at 11:3-9; 21:18-22:1. In short, Canon's reference to the Special Power of Attorney is merely a distraction. The Special Power of Attorney does not constitute evidence, indirect or otherwise, that Mr. van der Putten agreed to defraud Canon, or even that he knew others were planning to defraud Canon.

3.  *Mr. van der Putten initiates the Law 6209 Action*

Canon asserts that Mr. van der Putten initiated the Law 6209 action "with [his] knowledge that Lantech was soon to be rendered insolvent." Revised Appeal at p. 22. Plaintiff points to no record evidence to support this sweeping statement, and therefore does not satisfy its burden as the party resisting summary judgment. In lieu of evidence, Canon relies on the singular fact that the Law 6209 claim was initiated about a month before Lantech and Easton executed the Purchase and Sale Agreement. This sequence of events does not amount to circumstantial evidence of Mr. van der Putten's participation in a conspiracy to defraud Canon. Rather, it underscores that Canon is grasping at straws and that its complaint is based on pure speculation.

4.  *The sum of Canon's evidence*

The universe of Canon's evidence against Mr. van der Putten remains unchanged. As Magistrate Judge McAliley remarked, the sum total of Canon's evidence against Mr. van der Putten is that Lantech hired him as counsel to file the Costa Rica action. No reasonable inference of an agreement between Mr. van der Putten and Mr. Jiménez or the Difoto Defendants

SQUIRE, SANDERS & DEMPSEY (US) LLP

to defraud Canon through the sale of Lantech's assets to Easton can be drawn from this, or any of the record evidence relied on by Canon.  *See Lochin v. Verizon Florida LLC*, No. 8:09-cv-1535-T-23TBM, 2010 WL 4056034, * 6 (M.D. Fla. Oct. 15, 2010) (granting defendant summary judgment on claim of civil conspiracy where plaintiff provided insufficient evidence of a conspiracy).

In conclusion, Canon fails to present factual evidence that creates a genuine dispute as to the civil conspiracy claim asserted against Mr. van der Putten.  Accordingly, the Court should adopt Magistrate Judge McAliley's recommendation and grant summary judgment in Mr. van der Putten's favor.

## V.
## MAGISTRATE JUDGE McALILEY CORRECTLY GRANTED SUMMARY JUDGMENT IN FAVOR OF MANUEL JIMÉNEZ AS TO CIVIL CONSPIRACY

Canon also asserts a civil conspiracy claim against Mr. Jiménez.  Canon alleges that Mr. Jiménez sold Lantech's assets and commenced the Law 6209 litigation for the purpose of defrauding Canon.  Canon fails to present any evidence that creates a genuine dispute.

In its Revised Appeal, Canon argues that Magistrate Judge McAliley "disregarded the substantial evidence showing that the so-called 'arms length agreement' was a fraudulent transfer."  D.E. 463, pp. 22-23.  She did not.  The R&R reveals that Magistrate Judge McAliley closely examined the "facts" upon which Canon relies and found that they were unsupported by the record excerpts cited.  R&R at p. 19.  Canon again attempts to cobble a story out of irrelevant and often unsupported facts.  Each is addressed below:

1.      "*Jiménez met with and negotiated the fraudulent transfer with [Difoto]*"

Canon contends that "Jiménez met with and negotiated the fraudulent transfer with the then Chief Executive Officer of Difoto, Maria Tabush."  Revised Appeal (citing R&R at 21).

SQUIRE, SANDERS & DEMPSEY (US) LLP

The referenced citation does not support this "fact."  Indeed, had Magistrate Judge McAliley found that Mr. Jiménez negotiated a fraudulent transfer, she certainly would not have granted summary judgment in his favor.  The only fact actually established is that Mr. Jiménez and Ms. Tabush met to discuss forging a commercial transaction.  D.E. 363-8, at 58:9-59:11.  Canon's attempt to characterize this as negotiation of a fraud is simply overreaching.

> 2.      Mr. Jiménez "had his own agenda . . . to dispose of [a] personal loan"

Canon also relies on the mistaken belief that Mr. Jiménez personally guaranteed one of Lantech's business loans.  For numerous reasons, Canon's reliance on the guarantee is flawed.

First, contrary to Canon's representation, none of the deposition excerpts cited support the allegation that Jiménez "had his own agenda" or that he "tailored the transaction to dispose of the guarantee."  Revised Appeal at p. 23.  Rather, Mr. Jiménez simply testified that the asset sale included the loan.  Mr. Jiménez also errantly testified, without the benefit of transaction or loan documents before him, that he and other Lantech officers personally guaranteed that loan.  Upon reviewing the pertinent documents, Mr. Jiménez corrected his prior testimony and stated by declaration that he did not personally guarantee that loan.  D.E. 355.

Second, even if Mr. Jiménez had guaranteed the loan, that act does not constitute evidence of a conspiracy.  *See Hoover v. Florida Hydro, Inc.*, No. 07-1100, 2009 WL 1380619 (E.D. La. 2009) (applying Florida law).  The plaintiff in *Hoover* alleged conspiracy to affect a fraudulent transfer against the defendant's corporate director and pointed to the fact that the director had a "personal stake" because he had personally guaranteed the payment in question. *Id*. at *6.  The court disagreed, noting that: "Personal guarantees by the company's executive to assume an obligation of this closely held company does not thereby in and of itself show an activity that is separate and distinct from the corporation's interest; nor does it, even minimally,

SQUIRE, SANDERS & DEMPSEY (US) LLP

show the existence of a conspiracy." *Id*. The court found that such allegations, even if true, were "insufficient to raise a question as to whether [the director] had a personal stake in the conspiratorial actions alleged ... ." *Id*. at *6.

The *Hoover* Court's interpretation of Florida is applicable here. Similar to *Hoover*, Canon alleges, albeit erroneously, that Mr. Jiménez has a personal agenda because he guaranteed Lantech's loan. Canon identifies no other benefit Mr. Jiménez stood to gain. As held by the *Hoover* Court, these facts, even if true, are insufficient to raise a question as to whether Mr. Jiménez has a personal agenda for defrauding Canon.

Finally, Plaintiff presents no evidence that Lantech was substantially likely to default or that the bank was substantially likely to invoke the guarantee. In fact, the record reveals that Lantech had sufficient cash flow and always kept the loan payments current. D.E. 351-1 at 128:1-131:3. Accordingly, even if Mr. Jiménez had personally guaranteed the loan (he did not), he was not personally at risk.

3.   *Mr. Jiménez was actively involved in the asset sale and signed the Special Power of Attorney*

Having eliminated the above contentions, the sum of evidence on which Canon rests its conspiracy claim is: (i) Mr. Jiménez was actively involved in the sale of Lantech's assets and met with Difoto's CEO to discuss the transaction; and (ii) in his capacity as President, Mr. Jiménez signed the Special Power of Attorney that Lantech granted to Mr. van der Putten. No reasonable inference of an agreement between Jiménez and Difoto to defraud Canonlat through the sale of Lantech's assets to Easton can be woven from this threadbare evidentiary foundation.

This does not even constitute circumstantial evidence of a conspiracy because Canon has not even attempted to demonstrate that the inference it seeks "outweighs all reasonable

SQUIRE, SANDERS & DEMPSEY (US) LLP

inferences to the contrary." *Diamond*, 511 So. 2d at 1034.  The fact that Mr. Jiménez was the point person for litigation and that he participated in the asset sale could equally be explained as acts undertaken in the normal course of business in his capacity as President.  Canon offers no basis for inferring that these acts carry any other import.

In conclusion, Canon fails to present factual evidence that creates a genuine dispute as to the civil conspiracy claim asserted against Mr. Jiménez.  Accordingly, the Court should adopt Magistrate Judge McAliley's recommendation and grant summary judgment in Mr. Jiménez's favor.

**VI.**
**MAGISTRATE JUDGE McALILEY CORRECTLY GRANTED SUMMARY**
**<u>JUDGMENT AS TO MR. JIMÉNEZ ON PIERCING THE CORPORATE VEIL</u>**

In Count III, Canon seeks pierce the corporate veil and hold Mr. Jiménez liable for Lantech's alleged fraudulent transfer.  Magistrate Judge McAliley recommended that the Court grant summary judgment in Mr. Jiménez's favor on a simple and straight basis: he is not a shareholder of Lantech.  This conclusion is supported by both undisputed facts and well-established Florida law holding that only shareholders may be liable for the corporation's debts under a veil piercing theory.

**A.**      <u>**Mr. Jiménez is not a Shareholder of Lantech**</u>

Magistrate Judge McAliley correctly found, based on her review of the evidence, that Mr. Jiménez is not a shareholder of Lantech.  R&R at p. 24 ("The undisputed facts establish that Jimenez is not a shareholder of Lantech.").  This simple fact is uncontroverted.

Lantech is owned by four shareholders – Edificio Jiménez, S.A.; Monty, S.A.; Immobilaria, MLS, S.A.; and Inversions del Poniente, S.A.  D.E. 351-1 at 79:3-4; 83:14-25.  Mr. Jiménez is a shareholder of Rapipunto Internacional, S.A.  *Id*. at 82:25-83:2.  Rapipunto

22

Internacional, S.A. has an ownership interest in Rapipunto, S.A. *Id*. at 79:3:83:4.   In turn, Rapipunto owns twenty percent of Dimo Profesional, S.A. *Id*. at 79:3:83:4.   Dimo Profesional, S.A., has an interest of approximately twenty-five percent in Edificio Jiménez, S.A. *Id*.  Edificio Jiménez, in turn, has a twenty-five percent interest in Lantech.   *Id*.   These facts are uncontroverted.

Canon wishes to create a genuine issue of material fact by citing to a truncated excerpt of Mr. Jiménez's deposition.   Revised Appeal at p. 24 ("the R&R overlooks Jiménez's unambiguous testimony that he was in fact a Lantech shareholder").  The passage reads:

> Q:      (by Canon)  So I think what you are saying to me is that you personally are not a shareholder of Lantech, but through a company that you own or control you are a shareholder of Lantech, correct?
>
> A:      (by Jiménez)  I don't control that company, but, yes, through a series of companies, I end up being a small shareholder of Lantech.

D.E. 351-1 at 43:17-23.

Although not included in Canon's citation, Mr. Jiménez immediately clarified:

> Q:      (by Canon) Through a series of companies?
>
> A:      (by Jiménez) Yes.
>
> Q:      Not just one company?
>
> A:      Not just one.

*   *   *

> Q:      So through a chain of at least five companies, you are and have a financial interest in Lantech, is that right?
>
> A:      That is correct

*Id.* at 43:24-44:11.   Mr. Jiménez then clearly explained the layers of corporate entities intervening between himself and Lantech.   *Id*. at 79:3:83:25.   Placed in context, Canon's record citation does not establish that Mr. Jiménez owns Lantech.

Canon's attempt to create a disputed fact is not genuine.   It remains uncontroverted that Mr. Jiménez is not a Lantech shareholder.

**B.**     **Piercing the corporate veil under Florida law**

A corporation is a legal entity, a fictional person capable of entering contracts and doing business in its own right.  *Molinos Valle Del Cibao, C. por A. v. Lama*, No. 09-11153, 2011 WL 651996, *13 (11th Cir. Feb. 24, 2011) (applying Florida law)*.  The purpose of this fiction is to limit the liability of the corporation's owners, whether it be individuals or other corporations.  *Id*. Florida courts will not easily disregard this fiction.  *Id*.  (citing *Roberts Fish Farm v. Spencer*, 153 So. 2d 718, 721 (Fla. 1963)).

It is black letter law in Florida that to disregard this corporate fiction and pierce the corporate veil, the plaintiff must prove that:

> (1) the *shareholder* dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the *shareholders* were in fact alter egos of the corporation;
>
> (2) the corporate form must have been used fraudulently or for an improper purpose; and
>
> (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Id*. (citing *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008). "Shareholders" include individuals who own stock and parent companies who own their subsidiaries.  *Id*. (citing *McCormack v. Ribbeck*, 702 So. 2d 271, 271-72 (Fla. 1st DCA 1997) and *17315 Collins Ave., LLC v. Fortune Dev. Sales Corp*., 34 So. 3d 166, 168 (Fla. 3d DCA 2010).

SQUIRE, SANDERS & DEMPSEY (US) LLP

Canon contends that Magistrate Judge McAliley incorrectly analyzed the issue because ownership is not dispositive.  Canon argues that case law on piercing the corporate veil instead focuses on the degree of actual control, and that Mr. Jiménez should be held individually liable because he controlled Lantech.  The Eleventh Circuit recently assessed this very question and concluded that, under Florida law, ownership is a threshold requirement for piercing the corporate veil.  *Molinos*, 2011 WL 651996, at *13-14.

In *Molinos*, the plaintiff received a worthless check drawn from the account of corporate entities Chipstek and Expertek.  *Id*. at *5.  The plaintiff instituted an action to recover its monies and sought to hold an individual defendant, Lama, liable by piercing the corporate veil.  *Id*. at *12.  Lama argued that the plaintiff's piercing the corporate veil claim failed as a matter of law because he was not a shareholder of either corporation.  *Id*. at *13.  Chipstek and Expertek were owned by Globaltek.  *Id*. at *14.  Globaltek was in turn owned by ORLS International Holdings, which was in turn owned by L&S Corp., which was, finally, owned by Lama.  *Id*. at *14, n.21. In retort, the plaintiff argued that focus on ownership was a contrived approach to the law and that Lama should be held liable because he controlled Chipstek and Expertek by virtue of his position as director.  *Id*. at *13.

The Eleventh Circuit carefully examined Florida piercing the corporate veil jurisprudence and determined that Florida law, as predicted by the court, "does not permit a plaintiff to pierce the corporate veil against a non-shareholder director." *Id*. at *15.  Thus, the court held that the plaintiff's corporate veil claim failed as a matter of law.  *Id*.  The court further noted that if the plaintiff believed that Chipstek and Expertek were really sham entities, it should have sued Globaltek, not Lama.  *Id*.  The court also observed that the plaintiff could hypothetically hold

SQUIRE, SANDERS & DEMPSEY (US) LLP

Lama liable "by piercing the corporate veil through *each corporation between* Globaltek and Lama," but it did not pursue this theory. *Id*. at \*15, n.21 (emphasis added).

*Molinas* governs here.  Canon urges this Court to pierce through Lantech to a non-shareholder director and ignore each of the corporate entities between Lantech and Mr. Jiménez. This was the very proposition rejected by the Eleventh Circuit, and must also be rejected by this Court. *Posner v. Essex Insurance Co.,* 178 F.3d 1209, 1217 (11th Cir. 1999) (absent Florida Supreme Court authority, federal district courts are bound by Eleventh Circuit interpretation of Florida law).  Canon cannot reach Mr. Jiménez by piercing Lantech's corporate veil because Mr. Jiménez is not a shareholder.  Nor may the Court disregard the intervening corporate entities. Accordingly, as in *Molinos*, Canon's piercing the corporate veil claim fails as a matter of law.

For these reasons, the Court should adopt Magistrate Judge McAliley's recommendation and enter summary judgment in favor of Mr. Jiménez on Count III.

## VII.
## MAGISTRATE JUDGE McALILEY CORRECTLY CONCLUDED THAT CANON IS NOT ENTITLED TO RECOVER ATTORNEYS' FEES AS DAMAGES

Canon seeks to recover attorneys' fees as damages against all of the defendants.  If the Court adopts Magistrate Judge McAliley's recommendations that the defendants' motions for summary judgment be granted for the reasons set forth above, it need not reach this issue.

Canon seeks attorneys' fees under two separate theories.  First, as against Lantech, it asserts a claim for fees "incurred in being required to litigate against Difoto in *Canon II*." Revised Appeal at p. 28.  Canon seeks these fees under the wrongful act doctrine.  *Id*. at 28-29. Magistrate Judge McAliley concluded that the wrongful act doctrine does not provide a basis for recovery of such fees.  R&R at p. 32.  **Canon does not object to this component of Magistrate Judge McAliley's recommendation**, and thus, the recommendation should be adopted.  *Macort*,

SQUIRE, SANDERS & DEMPSEY (US) LLP

208 Fed. Appx. at 784-785 (no valid objection to report where party failed to specifically identify objectionable portions of recommendation and specific basis for its objections).

Canon objects only to Magistrate Judge McAliley's application of the wrongful act doctrine to the second category of fees: those incurred in *Canon I* and the Costa Rica action "as damages arising from the **civil conspiracy** perpetrated by the Difoto Defenants, Jiménez and Van[sic] der Putten."  D.E. 463 at p. 28 (emphasis added).[7]  Canon's claim for this category of attorneys' fees fails for numerous reasons.

First, it is axiomatic that under the "American Rule," each party bears its own attorneys' fees unless a contract or statute provides otherwise.  *See United States v. Pepper's Steel & Alloys, Inc.*, 289 F.3d 741, 742 (11th Cir. 2002); *Harbaugh v. Greslin, et al.*, 365 F. Supp.2d 1274, 1276-7 (S.D. Fla. 2005) (citing *Sholkoff v. Boca Raton Cmty. Hosp., Inc.*, 693 So. 2d 1114, 1118 (Fla. 4th DCA 1997) ("attorney's fees are recoverable from another party … when the parties have so agreed in advance or when the legislature has so provided in an applicable statute.").  Canon pled no such entitlement to recover its attorneys' fees.  Therefore, as a matter of law, its demand fails.

Second, Canon now offers only one possible basis for recovery, the "catch all" provision of the Florida Uniform Fraudulent Transfer Act ("FUFTA"), § 726.103(1)(c)(3).  However, Canon asserts no FUFTA claim against Mr. Jiménez or Mr. van der Putten.  Thus, FUFTA cannot serve as a basis for recovering attorneys' fees against these defendants.

Third, the interpretation of FUFTA urged by Canon contravenes deeply rooted  principles of statutory construction.  It is well established that common law rules apply "unless  clearly and

---

[7] Canon has never claimed this category of fees against Lantech (in the original summary judgment briefing or its Revised Appeal).  To be sure, Canon did not assert a conspiracy claim against Lantech and therefore could not pursue this theory against Lantech.

SQUIRE, SANDERS & DEMPSEY (US) LLP

expressly abrogated by statute." *Humana Health Plans v. Lawton*, 675 So. 2d 1382, 1384 (Fla. 5th DCA 1996). A statute which is in derogation of common law "must be strictly construed, and the presumption is that no change in the common law is intended unless the statute explicitly so states." *Id.* (citing *Board of Trustees of the Internal Improvement Trust Fund v. Sand Key Assoc., Ltd.*, 512 So. 2d 934 (Fla.1987)). Statutes in derogation of common law will not be interpreted to displace the common law further than is clearly necessary. *Id.* (citing *Carlile v. Game and Fresh Water Fish Commission*, 354 So. 2d 362, 364 (Fla. 1977)). Inference and implication cannot be substituted for clear expression. *Id.* Moreover, statutes authorizing awards of attorney's fees are in derogation of common law. *McMullen Oil Co. v. ISS Intern. Serv. Sys. Inc.*, 698 So. 2d 372, 373 (Fla. 2d DCA 1997) (collecting cases).

Here, Canon recognizes that FUFTA does not expressly provide for the recovery of attorneys' fees as damages. Instead, Canon argues that FUFTA's equitable nature grants the Court wide latitude in fashioning remedies, and that such remedies should include attorneys' fees. Applying the rules of construction set forth above, however, the absence of an explicit fee provision is fatal to Canon's fee demand. The legislature could have expressly authorized the recovery of attorneys' fees, but it did not. Therefore, the Court may not infer that the legislature intended to abrogate the common law rule.

In sum, FUFTA'a catch all provision does not provide a basis for the recovery of fees incurred in *Canon I* and the Costa Rica action. Canon cites no other authority in support of its demand. Thus, as matter of law, Canon is not entitled to recover attorneys' fees as damages. Accordingly, the Court should adopt Magistrate Judge McAliley's recommendation and enter summary judgment in favor of all defendants on the issue of Canon's attorneys' fee demand.

SQUIRE, SANDERS & DEMPSEY (US) LLP

**VIII.**

**<u>CONCLUSION</u>**

WHEREFORE, for the reasons outlined above, this Court should adopt each of Magistrate Judge McAliley's recommendations and (i) deny Canon's Rule 56(f) motion, (ii) enter summary judgment in Lantech's favor as to Count I, (iii) enter summary judgment in Mr. van der Putten's favor as to Count II, (iii) enter summary judgment in Mr. Jiménez's favor as to Counts II and III; and (iv) enter summary judgment in favor of all defendants as to Canon's attorneys' fees demand.

Dated:  March 18, 2011
      West Palm Beach, Florida

Respectfully submitted,

SQUIRE, SANDERS & DEMPSEY L.L.P.
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:   +1.561.650.7200
Facsimile:    +1.561.655.1509

By:  *s/ Maria Jose Moncada*
    Traci H. Rollins
    Florida Bar No.0769071
    trollins@ssd.com
    Maria J. Moncada
    Florida Bar No. 0773301
    mmoncada@ssd.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 18, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                      *s/ Maria Jose Moncada*
                      Maria Jose Moncada

29

**SERVICE LIST**
**Canon Latin America v. Lantech (C.R.), S.A., et al.**

**Case No. 08-2158-Civ-JORDAN/McALILEY**
**United States District Court, Southern District of Florida**

Michael Diaz, Jr.
mdiaz@diazreus.com
Carlos F. Gonzalez
cgonzalez@diazreus.com
Brant C. Hadaway
bhadaway@diazreus.com
Gary E. Davidson
gdavidson@diazreus.com
DIAZ REUS & TARG, LLP
100 Southeast 2nd Street, Suite 2600
Miami, FL 33131
Telephone:  (305) 375-9220
Facsimile:    (305) 375-8050

**Counsel for Plaintiff Canon Latin America, Inc.**

Traci H. Rollins
trollins@ssd.com
Maria J. Moncada
mmoncada@ssd.com
SQUIRE, SANDERS AND DEMPSEY (US) LLP
777 South Flagler Drive
1900 Phillips Point West
West Palm Beach, FL 33401
Telephone:  (561) 650-7200
Facsimile:    (561) 655-1509

**Counsel for Defendants Lantech (CR) S.A., Manuel Jiménez, and Robert C. van der Putten Reyes**

Jill N. Berman
jnberman@BRVMLAW.COM
Berman Rennert Vogel &
    Mandler, P.A
Miami Tower, Suite 2900
100 S.E. Second Street
Miami, Florida 33131
Telephone (305) 577-4177
Facsimile (305) 373-6036

**Counsel for Defendants Documentos y Digitales Difoto, S.A, Documentos y Digitales, S.A and Easton Commerce, S.A.**

WESTPALMBEACH/580534.7